UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-99-KSF

ROY FITZGERALD HARRIS,                                                    PETITIONER

V.                          **PROPOSED FINDINGS OF FACT
                              AND RECOMMENDATION**

JAMES SWEATT, Warden,                                                    RESPONDENT

\* \* \* \* \*

## I.  INTRODUCTION

On April 6, 2007, petitioner Roy Fitzgerald Harris, by counsel, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, concerning his conviction in Fayette Circuit Court on or about June 20, 2001.  On August 17, 2007, the Respondent filed his answer to the petition and also moved to dismiss, and in the alternative, for summary judgment.[1]  This matter has been fully briefed and is ripe for review.

In accordance with local practice, this matter was referred to the undersigned Magistrate Judge for consideration pursuant to 28 U.S.C. § 636(b).  See Rule 10, Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 72(b).

## II.  DISCUSSION

**A.      Prerequisites for Federal Habeas Corpus Review**

In order to grant relief in a proceeding pursuant to 28 U.S.C. § 2254, the court must find that certain prerequisites for granting relief are present.  If these prerequisites are not met, the court must dismiss the petition without addressing its merits.  Specifically, the court must find that:  (1)

---

[1] Along with his Answer and response to habeas petition and motion to dismiss or for summary judgment, the Respondent also filed an Appendix (hereafter "A") consisting of (1) relevant portions of the state court record, (2) the briefs filed in the Kentucky Court of Appeals in reference to the direct appeal and to petitioner's RCr 11.42 motion, and (3) the opinions of the Kentucky Court of Appeals affirming petitioner's conviction and affirming the denial of his RCr 11.42 motion.

petitioner is in "custody"; (2) petitioner has exhausted the remedies available to him in state court; and (3) petitioner did not waive or forfeit the right to present a particular issue by failing to follow state court rules to ensure that the state courts would review that issue on appeal.

At the time petitioner filed this action, he was an inmate at the Roederer Correctional Complex in LaGrange, Kentucky.  Thus, the first prerequisite is satisfied.  In the discussion below, the Magistrate Judge will determine whether the remaining two prerequisites are satisfied.

**B.      Factual and Procedural History**

On October 4, 2000, a grand jury of the Fayette Circuit Court returned a four-count indictment against petitioner, charging him with one count of Sodomy First Degree and with two counts of Sexual Abuse First Degree, for alleged sexual contact petitioner had, on or about July 15 or 16, 2000,[2] with D.E., a person under twelve years of age.  The fourth count of the indictment charged petitioner with being a Persistent Felony Offender ("PFO") Second Degree.  Indictment (A, pp.1-2).

Petitioner pled not guilty to the foregoing charges, proceeded to a jury trial on the sexual abuse and PFO charges,[3] and was found guilty of Counts 2 and 3 of the indictment, the Sexual Abuse First Degree charges, and of being a PFO Second Degree.  On June 20, 2001, petitioner was convicted of two counts of Sexual Abuse First Degree Robbery and of PFO Second Degree and received concurrent, 5-year sentences of imprisonment on each of the Sexual Abuse First Degree charges, enhanced to concurrent, 10-year sentences, by reason of the PFO Second Degree conviction, for a total sentence of ten (10) years.  (A, pp. 21-24).

Petitioner appealed his conviction to the Kentucky Court of Appeals.  In an unpublished opinion rendered on May 31, 2002, the Kentucky Court of Appeals affirmed petitioner's conviction. (A, pp. 76-85).

---

[2] On the morning of the trial, the Commonwealth amended the dates on the indictment from July 15 or 16, 2000, to include the years 1998 to July 16, 2000.
[3] The sodomy charge was dismissed prior to trial.

Thereafter, on September 19, 2003, petitioner, *pro se*, filed a motion in the trial court, pursuant to RCr 11.42, to vacate his conviction and sentence. (A, pp. 86-104). Subsequently, petitioner, then being represented by counsel, supplemented his RCr 11.42 motion. Upon the full briefing of said RCr 11.42 motion, in an Opinion & Order entered on December 6, 2004, the trial court denied petitioner's RCr 11.42 motion. (A, 132-34).

Petitioner appealed the denial of this RCr 11.42 motion to the Kentucky Court of Appeals. In an unpublished opinion rendered on February 17, 2006, the Kentucky Court of Appeals affirmed the trial court's denial of petitioner's RCr 11.42 motion. (A, pp. 183-87).

**D.      Petitioner's claims**

As grounds for relief, petitioner asserts that (1) he received ineffective assistance of counsel at trial when his counsel (a) failed to object to the prosecutor improperly vouching during closing argument concerning the credibility D. E., the non-testifying complaining witness, and (b) failed to object to the improper bolstering by Dr. Janice Kregor, an examining physician who was a prosecution witness, and (2) he was denied a fair trial, in violation of the Fourteenth Amendment, by the extensive opinion testimony by an unqualified expert, Virginia Luftman, a psychotherapist, who testified that the victim, D. E., had exhibited symptoms of sexual abuse.

In response to the habeas petition, the respondent submits that petitioner's claims raised therein are without merit; therefore, respondent argues that the habeas petition should be dismissed and/or that he is entitled to summary judgment.

**Applicable law**

In considering Petitioner's claims, the court is cognizant that the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 prohibits federal courts from granting writs of habeas corpus on claims previously adjudicated on the merits in state court unless that adjudication:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

In *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000), the Sixth Circuit recognized that by reason of the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), issued on April 18, 2000, the standard of review that a federal habeas court must apply under § 2254(d) had been changed and that *Nevers v. Killinger*, 169 F.2d 352 (6th Cir. 1999), had effectively been overruled. Elaborating, the court in *Harris v. Stovall, supra*, explained:

> On April 18, 2000, the Supreme Court issued a decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), setting forth the standard of review that a federal habeas court must apply under § 2254(d). The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at 1523, 120 S.Ct. 1495. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 1522, 120 S.Ct. 1495.
>
> In this case, the district court referred to our holding in *Harpster*, which simply noted the differing interpretations of § 2254(d) developing in our sister circuits, but found that the standard under § 2254(d) had not been met. See *Harpster*, 128 F.3d at 326-27. Subsequently, in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), cert. denied, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999), we found it appropriate to rely on the Fifth Circuit's "debatable among reasonable jurists" standard in *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), combined with the First Circuit's standard of "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," set forth in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998). *See Nevers*, 169 F.3d at 361-62. Later, we reaffirmed this approach in *Maurino v. Johnson*, 210 F.3d 638, 643-44 (6th Cir.2000). However, the Supreme Court in *Williams* found that the Fourth Circuit's test--that a state court's application of federal law was "unreasonable" only if the court had applied federal law in a manner that reasonable jurists would all agree was unreasonable--was erroneously subjective, as the inquiry should be objective. The Court expressly disavowed the Fifth Circuit's "reasonable jurist" standard set forth in *Drinkard*. In light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d). We must therefore rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d).

*Harris v. Stovall*, *supra*, 212 F.3d at 942-43.

With this standard in mind, it is necessary to review petitioner's claims raised herein in light of the decision of the Kentucky Court of Appeals on direct appeal and the decision of the Kentucky

Court of Appeals in respect to the appeal of the denial of petitioner's RCr 11.42 motion to determine

if either of those adjudications:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

**1.      The testimony of Virginia Luftman**

Virginia Luftman, is a licensed clinical social worker and psychotherapist at the University

of Kentucky's Department of Psychology, who treated the victim, D. E., over the course of several

months following the incidents of alleged sexual abuse.  On direct appeal, petitioner asserted that

since Luftman is not a medical doctor, the trial court erred in allowing Luftman to testify concerning

certain statements D. E. made to her during the course of her sessions with him, arguing that

licensed clinical social workers or psychotherapists are not within the scope of those physicians who

are allowed to testify as to statements made by their patients, and that this error by the trial court

denied him a fair trial.

In considering this claim on direct appeal, the Kentucky Court of Appeals, analyzed this

claim, as follows:

> One of the Commonwealth's witnesses at trial was Virginia Luftman, a psychotherapist at the University of Kentucky's Department of Psychology. Luftman was a licensed clinical social worker.  In a pretrial hearing concerning the admissibility of her testimony, Luftman stated that her primary motive for talking with D. E. was to provide him therapy and was not for the purpose of investigating the sex crimes committed against him.  Luftman testified during the trial that D. E. told her the specific details of being sexually abused by "Uncle Roy." (footnote omitted).
>
> Harris's first allegation of error is that the trial court erred in allowing Luftman to testify concerning the aforementioned statements made to her by D. E. Harris asserts that Luftman is not a medical doctor and that licensed clinical social workers or psychotherapists are not within the scope of those physicians who are allowed to testify to statements made by their patients.
>
> The trial court rejected Harris's arguments and allowed the testimony pursuant to Edwards v. Commonwealth, Ky., 833 S.W.2d 842 (1992). In Edwards, the Kentucky Supreme Court upheld  a ruling by a trial court allowing similar statements made by a child victim to both a medical doctor and a clinical psychologist into evidence under KRE 803(4)  Id. at 844-45.  (footnote omitted). KRE 803 (4) provides the following exception to the hearsay rule:

Statements for purposes of medical treatment or diagnosis. Statements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis.

KRE 803 (4).

. . .

Having examined the authorities presented by the parties to support their respective arguments, we conclude that the trial court properly allowed Luftman to testify concerning statements made to her by D. E. concerning the sexual abuse and the identity of the perpetrator. The cases cited by Harris can all be distinguished. Souder is distinguishable because the witness was a social worker who interviewed the child victim for the purpose of investigating the crime and possibly testifying about it. There was no indication in that case that the social worker interviewed the child for purposes of treatment or therapy. Hellstrom is distinguishable because the court rejected the testimony of the certified clinical social worker because it improperly vouched for the truth of the child's out-of-court statements based on the child sexual abuse syndrome which was not recognized as reliable as a scientific entity. Sharpe is distinguishable because the witness did not interview the child for the purpose of treatment or therapy. (footnote omitted). Finally, Prater is distinguishable because the witness did not purport to have rendered treatment to the victim. Because Luftman's primary purpose in counseling D. E. was to provide him therapy and not to investigate the sex crimes committed against him, her testimony was admissible. See Edwards, 833 S.W.2d 842, and Stringer, 956 S.W.2d 883.

Harris also argues that even if Luftman was [sic] qualified to testify, statements made to her by D. E. and his mother were unreliable and also hearsay on hearsay and should have been excluded. Concerning Luftman's testimony regarding statements made to her by D. E., Harris argues that the statements were not reliable because they were inconsistent. Harris argues that the statements should have been excluded pursuant to KRE 403 because the probative value was substantially outweighed by the danger of undue prejudice. We believe, however, that any inconsistency in D. E.'s statements go to credibility and not admissibility.

Harris also argues that Luftman's testimony concerning statements made to her by D. E.'s mother were hearsay on hearsay and thus far beyond the scope of KRE 803(4). Harris further asserts that Luftman's testimony that D. E.'s mother stated, "this is not my child" bolstered the fact that something happened to D. E. and was thus inadmissible. None of these complaints by Harris concerning Luftman's testimony point to Harris as the perpetrator. Having reviewed the allegations of error in this regard, we deem any error to be harmless. RCr 9.24. (footnote omitted).

A, pp. 77-78, 81-82.

In support of his claim raised herein, petitioner asserts that the state appellate court did not identify the controlling Supreme Court precedent or explicitly rule that the admission of the incompetent expert testimony did not violate the Due Process Clause of the Fourteenth Amendment. For these reasons, petitioner contends that the decision of the Kentucky Court of Appeals in respect

to this issue on direct appeal is "contrary to" clearly established Federal law, as determined by the Supreme Court of the United States.  In support of his argument that the trial court erred in allowing the testimony at issue from Virginia Luftman, petitioner relies on *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky. 1992), and *R.C. v. Commonwealth*, 101 S.W.3d 897 (Ky. App. 2002).  Petitioner further argues that the admission of the incompetent evidence from Virginia Luftman so infected the trial that he was denied a fair trial in violation of his constitutional rights.  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

In considering this argument, the Magistrate Judge notes that in analyzing this claim on direct appeal, the Kentucky Court of Appeals determined that all of the cases cited by petitioner in support of this claim, *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), *Hellstrom v. Commonwealth*, Ky., 825 S.W.2d 612 (1992), *Sharp v. Commonwealth*, Ky., 849 S.W.2d 542 (1993), and *Prater v. Cabinet for Human Resources*, Ky., 954 S.W.2d 954 (1997), were distinguishable and that since Luftman's primary purpose in counseling D. E. was to provide him therapy and not to investigate the sex crimes committed against him, her testimony was admissible, as seen in Edwards v. Commonwealth, Ky., 833 S.W.2d 842 (1992), and Stringer v. Commonwealth, Ky., 956 S.W.2d 883 (1997).

The Kentucky Court of Appeals was also unpersuaded by petitioner's argument that even if Luftman were qualified to testify, the statements made to her by D. E. and his mother were unreliable and also hearsay on hearsay and should have been excluded.  In rejecting this argument, the Kentucky Court of Appeals held that any inconsistency in D. E.'s statements went to *credibility*, not admissibility, and that the statements made to Luftman by D. E.'s mother were not beyond the scope of KRE 803(4).  In the final analysis, the Kentucky Court of Appeals concluded that any error that may have occurred was harmless error that did not warrant a reversal of petitioner's conviction.

Upon review of the state court record, the applicable case law, and the arguments of counsel, the Magistrate Judge concludes that the trial court, after conducting a pre-trial hearing concerning the admissibility of Virginia Luftman's testimony (a hearing at which Virginia Luftman testified), committed no error (either as a matter of federal law or as a matter of state law) in allowing her to

testify concerning the statements made to her by D. E. and his mother; therefore, in the absence of any error, federal or state, petitioner's argument that he was denied a fair trial by the admission of Virginia Luftman's testimony is without merit.

Additionally, even if the trial court's ruling allowing Luftman's testimony might have been a violation of Kentucky law, it is well-settled that questions concerning the application of state law are generally not cognizable in a federal habeas corpus proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 n.2 (1991); *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002); *Schoenberger v. Russell*, 290 F.3d 831 (6th Cir. 2002). In this vein, rulings by a state's highest court with respect to interpretation of state law are binding on the federal courts. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (per curiam); *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir., cert. denied, 488 U.S. 866 (1988). Further, as noted in *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), "[i]t is especially inappropriate for federal habeas courts to set aside state court's ruling on issue of state law where state's appellate courts on direct appeal have already found particular claim to be meritless."

As noted above, the Kentucky Court of Appeals determined that petitioner was not denied a fair trial by the admission of Virginia Luftman's testimony. The Magistrate Judge concurs with this assessment and concludes that that decision was not "contrary to" clearly established federal law, as determined by the United States Supreme Court. Consequently, the Magistrate Judge concludes that petitioner is not entitled to habeas relief on this issue.

**2.      Ineffective assistance of counsel at trial**

Petitioner asserts that he received ineffective assistance of counsel at trial in that his counsel (a) failed to object to the prosecutor's improper vouching during closing argument as to the credibility of D. E., the non-testifying complaining witness, and (b) failed to object to the improper bolstering by Dr. Janice Kregor, an examining physician who was a prosecution witness.

The test for proving a claim of ineffective assistance of counsel was established in Strickland v. Washington, 466 U.S. 668 (1984), which adopted a two-part test, requiring a movant to show (1) that counsel's performance fell outside the wide range of professionally competent assistance guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense

so seriously that but for the alleged error of counsel, there is a reasonable probability that the result would have been different.

a.      **improper vouching by the prosecutor during closing argument**

Petitioner contends that his counsel was ineffective for not objecting to the prosecutor's improper vouching during closing argument as to the credibility of  D. E., a 4½-year-old child, who was the victim and non-testifying complaining witness.  In support of this claim, petitioner provides excerpts from the prosecutor's closing argument which he asserts are a representative sampling of the prosecutor's improper vouching.

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity or suggesting that information not presented to the jury supports the witness's credibility."  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9ᵗʰ Cir. 1993). It is blatantly improper for a prosecutor to comment on the credibility of a witness.  *United States v. Young*, 470 U.S. 1 (1985).  The Supreme Court has articulated two reasons why prosecutor vouching is condemned.  First, vouching by the prosecutor can convey the impression that evidence not heard by the jury but known to the prosecutor supports the charges against the defendant and consequently such comments jeopardizes the defendant's right to be tried solely on the basis of the evidence presented to the  jury.  Second, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *See also, United States v. Carroll*, 26 F.3d 1380, 1389 (6th Cir. 1994), ("We can not overstate the extent to which we disapprove of ...improper vouching by prosecutors.").

Petitioner's claim that his counsel was ineffective for not objecting to the prosecutor's improper vouching during closing argument was raised in his RCr 11.42 motion.  The trial court considered this claim, but rejected same for the following reasons:

> Third, the Defendant argues that the prosecutor improper[ly] vouched for the veracity of the child during her closing arguments.  The Kentucky Supreme Court held that a prosecutor is entitled to "...draw reasonable inferences from the evidence, to make reasonable comment upon the evidence and to make a reasonable argument in response to matters brought up by the defendant..." <u>Hunt v. Commonwealth</u>, Ky., 466 W. [sic] W.2d 957, 959 (1971).  The prosecutor's statements regarding whether the child was telling the truth is a reasonable inference, comment, or argument based on the evidence presented.

<u>Opinion & Order</u> (A, 134).

Petitioner pursued this claim in appealing the denial of his RCr 11.42 motion. However, the Kentucky Court of Appeals concluded that there was no merit to this claim for the same reasons expressed by the trial court, *viz.,* that a prosecutor is entitled to ".. .draw reasonable inferences from the evidence, to make reasonable comment upon the evidence and to make a reasonable argument in response to matters brought up by the defendant . . ." *Hunt v. Commonwealth*, Ky., 466 S.W.2d 957, 959 (1971). (A, 186). Thus, the Kentucky Court of Appeals impliedly found that the prosecutor's comments in question were simply a matter of the prosecutor making reasonable inferences, comment or argument *based on the evidence presented at trial* and were not improper vouching.

Contrary to petitioner's assertion raised herein that the state courts did not address his claim that his counsel was ineffective for not objecting to the prosecutor's improper vouching for the credibility of D. E. during closing argument, the record reflects that the state courts did address but reject petitioner's claim of ineffective assistance of counsel, finding that there was no improper vouching; therefore, petitioner's counsel could not have been ineffective for not objecting thereto. It is not necessary for the state appellate court to either cite to or even be aware of the U.S. Supreme Court precedent so long as the state court does not contradict the clearly established precedent. *Earley v. Packer*, 537 U.S. 3, 8 (2002). Where a state court summarily dismisses an argument without reasoning, the federal court may make an independent review of the record but the review is not *de novo*; the review must remain "deferential." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). In the present case, the state courts did not summarily dismiss this argument; instead, they analyzed it and determined that the prosecutor's comments were simply comments on the evidence and did not constitute improper vouching.

A federal habeas court should not apply the same standard of review to a state prosecutor's comments as federal appellate courts apply in exercising their supervisory authority over federal trial courts. In order to prevail on his claim of improper comments made during the prosecutor's closing argument, petitioner "must show that any prosecutorial misconduct 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"  *Henley v. Bell*, 487 F.3d 379, 389 (6th Cir. 2007) quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The Sixth Circuit Court of Appeals has recently restated its description of improper vouching by a prosecutor as one when "a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility" and thereby backs that witness with the prestige of the government.  *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir. 2007) citing *United States v. Trujillo*, 376 F.3d 593, 607-08 (6th Cir.2004).  Improper bolstering happens "when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id.*

Having reviewed the statements of the prosecutor in closing argument that are at issue herein, the Magistrate Judge concludes that they do **not** indicate a personal belief of the prosecutor in the truthfulness of the witness.  Instead, these statements are the prosecutor's commenting on and drawing reasonable inferences from the evidence.  As seen in *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999), a prosecutor may comment upon the credibility of a witness so long as he or she draws reasonable inferences from the evidence:

> . . .  If a defendant testifies as here, a prosecutor may attack his credibility to the same extent as any other witness.  *See Raffel v. United States*, 271 U.S. 494, 497, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), *see also Fitzpatrick v. United States*, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900).  This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony.  *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir.1994).  To avoid impropriety, however, such comments must "reflect reasonable inferences from the evidence adduced at trial." *See id.* (quoting *United States v. Goodapple*, 958 F.2d 1402, 1409-10 (7th Cir.1992)).  Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility. *Taylor*, 985 F.2d at 846 (citing *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988)).

170 F.3d at 551.

Additionally, in *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006), the Sixth Court found no Due Process violations where the state prosecutor repeatedly prefaced comments on the evidence with statements of his own belief:  "With respect to the vouching for Forest, the prosecution was arguably simply noting the consistency between his testimony and other evidence, and in any event

the vouching was isolated.  With respect to the repeated use of 'I believe' and 'I think,' it does not appear that the prosecution was acting intentionally in an attempt to influence the jury … ." *Id.*  In the instant case, the prosecutor did not even refer to herself or to her beliefs about to the evidence.

For all of the foregoing reasons, the Magistrate Judge concludes that the Kentucky state courts correctly concluded that the prosecutor's comments on the evidence did not amount to improper vouching and that petitioner was not denied a fair trial by those prosecutorial comments.  Thus, petitioner has not established that the decision of the state courts on this issue was either contrary to or was an unreasonable application of clearly established federal law.  Therefore, the Magistrate Judge also concludes that petitioner is not entitled to habeas relief on this issue.

**b.    improper bolstering testimony by Dr. Janice Kregor**

Petitioner also claims that his counsel was ineffective when he failed to object to the improper bolstering by Dr. Janice Kregor, an examining physician who was a prosecution witness.

Initially, petitioner's claim concerning the testimony of Dr. Janice Kregor was raised, not as a component of his claim of ineffective assistance of counsel in an RCr 11.42 motion, but was raised  on direct appeal wherein he alleged that the trial court erred in admitting the testimony in question, claiming that this testimony should have been excluded under KRE 403.  On direct appeal, the Kentucky Court of Appeals analyzed this claim, as follows:

> Harris's second argument concerns the admissibility of Dr. Janice Kregor's testimony.  Dr. Kregor is a University of Kentucky pediatrician who examined D. E.  Dr. Kregor's testimony was also the subject of a pretrial hearing.  Dr. Kregor testified that her physical exam of D. E. was normal but that a normal physical exam would not rule out sex abuse.  She also testified about statements D. E. made to her during the examination.
>
> Harris acknowledges that Dr. Kregor was examining D. E. for medical reasons, but he asserts that D. E.'s statements to Dr. Kregor were highly unreliable and should have been excluded pursuant to KRE 403.  He points to the fact that D.E. was interviewed by Detective Carol Simms on July 24, 2000, at the Child Advocacy Center, and was then interviewed one week later at the same location by Dr. Kregor.  D. E. made statements to Dr. Kregor incriminating Harris, and Harris asserts that the reliability of these statements is extremely low and that the danger of undue prejudice to him is very high.  Thus, he argues that the trial court erred in admitting the statements into evidence.
>
> Harris cites <u>Garrett v. Commonwealth</u>, Ky., 48 S.W.3d 6 (2001), to support his argument that the probative value of the testimony substantially outweighed the danger of undue prejudice to him.  <u>See id.</u> at 14.  The court in the Garrett case also stated that the balancing between probative value and the danger of undue influence was reserved to the sound discretion of the trial judge.  <u>Id.</u>  As we view Dr. Kregor's

testimony in conjunction with the other evidence at trial, we find no abuse of discretion by the trial court.

(A, pp. 83-84).

Subsequently, petitioner recharacterized his claim challenging the testimony of Dr. Janice Kregor as one of his claims that he received ineffective assistance of counsel when he counsel failed to object to this testimony, which he presented to the trial court in his RCr 11.42 motion. The trial court rejected this recharacterized challenge to the testimony of Dr. Kregor for the following reasons:

> . . . Second, the Defendant also argues that the testimony of Dr. Kregor was improper because it bolstered the Commonwealth's case. Likewise, the Court of Appeals ruled that the testimony was proper and that there was no abuse of discretion. These issues were decided on direct appeal and should not be raised on an RCr 11.42 motion. "In an RCr 11.42 proceeding, the movant cannot raise issues which were raised and decided on direct appeal." Wilson v. Commonwealth, Ky., 975 S.W.2d 901 citing Stanford v. Commonwealth, Ky., 854 S.W.2d 742 (1993), *cert. denied*, 510 U.S. 1049,114 S.Ct. 703,126 L.Ed.2d 669 (1994). The Supreme Court further held that "It is not the purpose of the RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon appeal considered by this court." Wilson citing Brown v. Commonwealth, Ky., 788 S.W.2d 500,501 (1990), quoting Thacker v. Commonwealth, Ky., 476 S.W.2d 838,839 (1972).

(A, pp. 133-34).

Petitioner pursued this claim in appealing the denial of his RCr 11.42 motion. The Kentucky Court of Appeals analyzed this claim, as follows:

> Harris argues that the physician who examined the child for signs of physical abuse stated during her testimony, "I don't know how much to say about what I found from other interviews or other information." He contends that this statement improperly corroborated testimony regarding the abuse which had been given by other witnesses. . . . .
>
> . . .
>
> The Court of Appeals also found no error in the physician's comments regarding "other evidence." As those issues were decided on direct appeal, that holding is binding on Harris and cannot be addressed anew. "In an RCr 11.42 proceeding the movant cannot raise issues which were raised and decided on direct appeal." Wilson v. Commonwealth, 975 S.W.2d 901 (Ky. 1998).

(A, pp. 185-86).

Dr. Janice Kregor, the pediatrician, determined that D. E. had a normal physical examination

and admitted that she had a difficult time understanding him.  In response to a question by the prosecutor, Dr. Kregor made the following statements:   "In his interview, [D.E.] didn't tell me a whole lot.  A normal physical exam doesn't rule out sexual abuse.  I don't know how much to say about what I found from other interviews or other information.  I don't want to go there."  (TT, 5/10/01, 13:59:39 – 14:00).

In the present action, petitioner asserts that his counsel was ineffective for not objecting  to the following portion of Dr. Kregor's foregoing testimony: "I don't know how much to say about what I found from other interviews or other information.  I don't want to go there."  Petitioner contends that these "other interviews or other information" were outside the record and led jurors to believe that D.E.'s hearsay statement was corroborated by unnamed sources.

A review of the state court record reflects that the prosecutor simply asked a legitimate question involving the relationship between the history the victim gave the physician and the doctor's physical findings.  In asking the question, the prosecutor made no suggestion that there was evidence outside the courtroom upon which the doctor should comment.  The doctor's statement, "I don't know how much to say about what I found from other interviews or other information" was unsolicited and was not directly responsive to the question asked by the prosecutor.  The Magistrate Judge concludes that this single isolated comment could not have impacted the jury, as the jury only learned from this statement that the doctor had conducted other interviews.  Similar to conducting "other tests," this statement is neither a positive nor a negative and did not adversely affect the petitioner or violate his right to a fair trial.  Therefore, his counsel could not have been ineffective for not objecting to this innocuous statement by Dr. Kregor.

For all of the foregoing reasons, the Magistrate Judge concludes that the Kentucky state courts correctly concluded that the statement at issue by Dr. Kregor did not deprive petitioner of a fair trial.  Thus, petitioner has not established that the decision of the state courts on this issue was either contrary to or  was an unreasonable application of clearly established federal law.  Therefore, the Magistrate Judge also concludes that petitioner is not entitled to habeas relief on this issue.

### III.  CONCLUSION

For all of the reasons stated above, based on a review of the state court record and the applicable case law relevant to federal habeas corpus petitions, the Magistrate Judge concludes that petitioner has not established that he is entitled to any federal habeas corpus relief on any of the claims raised in his habeas petition.

Accordingly, **IT IS RECOMMENDED** that respondent's motion to dismiss, or in the alternative, motion for summary judgment [DE #10] be **GRANTED**, that Petitioner's habeas petition be **DENIED** and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Fed.R.Civ.P. 6 and 72(b).

This 15th day of February, 2008.

Signed By:

*James B. Todd*

United States Magistrate Judge